UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEBRA HILTON, on Behalf of Herself and All Others Similarly Situated,<br><br>    Plaintiff,<br><br>    v.<br><br>APPLE INC.,<br><br>    Defendant.<br>_____/ | No. C-13-2167 EMC<br><br>**ORDER GRANTING IN PART DEFENDANT'S MOTION TO DISMISS OR STAY PROCEEDINGS; AND DENYING AS MOOT DEFENDANT'S (1) MOTION TO DISMISS AND/OR STRIKE COMPLAINT; AND (2) MOTION TO COMPEL ARBITRATION**<br><br>**(Docket Nos. 6, 7, 11)** |

## I.   INTRODUCTION

On May 10, 2013, Plaintiff Debra Hilton filed the instant putative class action against Apple Inc. alleging that Apple's iPhone 4 contains a latent defect which causes the power button on the phone to stop working. (Complaint, Dkt. No. 1). Before this Court are three motions: Defendant's Motion to Dismiss And/Or Strike Complaint (Dkt. No. 6), Defendant's Motion to Dismiss, or in the Alternative Stay Proceedings in Favor of First-Filed Action (Dkt. No. 7), and Defendant's Motion to Compel Arbitration of Claims and to Stay (Dkt. No. 11). Pursuant to Civil Local Rule 7-1(b), the Court determines that the matters are appropriate for resolution without oral argument.

The Court concludes that the first-to-file rule applies and that the case of *Missaghi v. Apple, Inc., et al.*, No. 13-CV-2003-GAF, before the Central District of California is the earlier filed action. Although Apple has only moved to have the instant action dismissed or stayed in favor of the *Missaghi* action, the parties are ordered to show cause why this action should not be transferred to the Central District of California.

Because the Court finds that the first-to-file rule applies, Defendant's other motions are **DENIED** as moot.

## II. FACTUAL & PROCEDURAL BACKGROUND

A. Factual Allegations Contained in the Instant Action

Plaintiff Debra Hilton filed the instant action as a putative class action on May 10, 2013. (Dkt. No. 1). Plaintiff alleges that she owns an iPhone 4 which she used on AT&T's mobile network. (*Id.* ¶ 30). Fifteen months after the phone had been purchased, and three months after its warranty expired, she claims that the power button on her iPhone 4 failed, keeping her from being able to turn on or off her phone. (*Id.*) Because her iPhone 4 was out of warranty, Plaintiff alleges that Apple refused to repair or replace her phone for free, but rather required her to pay $149.99 for a replacement phone. (*Id.* ¶ 32).

Plaintiff alleges that all iPhone 4s suffer a "latent defect" in their power button, affecting "thousands of consumers." (*Id.* ¶ 17). Specifically, she alleges that

> each iPhone 4 contains a flex cable that connects the power button to the phone. Premature deterioration of the flex cable causes the power button to become harder and harder to depress until eventually it becomes entirely unresponsive requiring costly repair.

(*Id.* ¶ 13). This defect allegedly causes the iPhone 4 to "not work for the reasonably expected lifespan of the product." (*Id.* ¶ 23). Apple is alleged to have known about this defect and that the defect would "be substantially certain to exhibit itself within approximately 18 months of the phone's first use." (*Id.* ¶ 15). The complaint contains a sampling of complaints that consumers have posted on various forums, including Apple's support forums. (*See id.* ¶¶ 18-25).

The complaint alleges that Apple and AT&T formed a RICO enterprise through association-in-fact. This association-in-fact is alleged to be designed to further the sale of Apple iPhones serviced by AT&T. (*Id.* ¶¶ 34-36). In furtherance of this alleged RICO enterprise, Plaintiff claims that Apple

> sent, received, and exchanged, through the use of interstate wires, numerous emails with personnel at AT&T during which Apple touted the superior attributes of the iPhone 4, but craftily and fraudulently omitted mentioning any disclosure of the material defect plaguing the

> phone's Power Button. Apple did the same in mailed communications with personnel at AT&T that were sent via the United States mail.

(*Id.* ¶ 43). Plaintiff, and the other members of the class, are alleged to have relied on this material omission regarding the suitability of the iPhone 4's power button. (*Id.* ¶ 45).

On the basis of these allegations, Plaintiff asserts three causes of action, one under RICO, 18 U.S.C. § 1962(c), one under RICO 18 U.S.C. § 1962(b), and one state law claim under California's UCL, Cal. Bus. & Prof. Code § 17200, *et seq.* (*Id.* ¶¶ 56-79).

Plaintiff seeks to represent a class defined as "all consumers who purchased an iPhone 4 for their own use . . . from either Apple or AT&T in the United States." (Dkt. No. 1, at 13).

B. <u>Apple Moves to Dismiss or Stay Based on the First to File Rule</u>

On July 8, 2013, Apple filed a motion to dismiss or stay proceedings in favor of a first-filed action. (Dkt. No. 7).[1] Apple bases this motion on the existence of a previously filed action currently pending before Judge Gary Feess in the Central District of California, *Missaghi v. Apple, Inc., et al.*, No. 13-CV-2003-GAF. (*Id.* at 1). Apple alleges that the *Missaghi* case and the instant case "assert identical causes of action, are based on the same allegations, and seek the same relief on behalf of the same class of consumers." (*Id.*)

C. The <u>*Missaghi* Proceedings</u>

The *Missaghi* case was filed in Los Angeles County Superior Court on February 14, 2013 against Apple and 100 Doe defendants. (Dkt 7, Ex. A, at 2). This class action complaint alleged that the iPhone 4 and iPhone 4S "was defective and unsuitable for its intended use. Specifically, after a number of uses, the power button on the IPHONE 4 becomes stuck. Thereafter, the user is unable to power off or reboot the device." (*Id.* at 3). The complaint further alleged that Apple "had knowledge of the defect" and "failed to disclose the design defect" in the iPhone 4 and iPhone 4S. (*Id.* at 7). The complaint asserted five causes of action: (1) Breach of Warranty; (2) Breach of the Implied Warranty of Merchantability; (3) Unjust Enrichment; (4) Violation of the Magnuson-Ross

---

[1] Apple concurrently filed a motion to dismiss or strike the complaint on the merits for failure to state a claim. (Dkt. No. 6). Approximately two weeks later, it filed a motion to compel arbitration. (Dkt. No. 11)

Warranty Act (15 U.S.C. § 2301); and (5) Violation of the California UCL. (*Id.* at 5-10).[2] Mr. Missaghi's state law complaint sought to represent a class of all purchasers of an iPhone 4 or iPhone 4S. (*Id.* at 2).

Apple removed the action to federal court under the Class Action Fairness Act on March 30, 2013. Apple then moved to dismiss and strike the complaint. On May 31, 2013, Judge Feess granted Apple's motion in part. (Dkt. No. 7, Exh. E). First, the court dismissed the first amended complaint with leave to amend on the basis that the Mr. Missaghi lacked standing as pleading because "Plaintiff has failed even to plead which product he purchased, and has neither explicitly nor implicitly alleged that he suffered any personal harm whatsoever." (*Id.* at 4). Second, the court dismissed the state law warranty claims with leave to amend because Missaghi had failed to allege that any defect "occurred within the warranty period" (*Id.* at 7). Third, the court dismissed the Magnuson-Ross Warranty Act with leave to amend because the failure to state a state law warranty claim doomed this count. (*Id.* at 8). Fourth, the court dismissed the unjust enrichment count with prejudice because Missaghi's allegations revealed the existence of an express contract. (*Id.* at 9). Finally, the court dismissed the California UCL claims with leave to amend because they were based in fraud and Missaghi failed to comply with the specificity requirements of Fed. R. Civ. P. 9(b). (*Id.* at 11). Finally, the court granted Apple's motion to strike, finding

> Plaintiff purchased only one device and has not alleged that the devices are identical. Plaintiff cannot allege any injury stemming from the model he never purchased. Accordingly, the Court **STRIKES** all allegations stemming from the model he never purchased. In his amended pleading, Plaintiff may either add a named plaintiff who purchased the other product or set forth allegations and a class definition stemming only from the model Plaintiff purchased.

(*Id.* at 12).

Missaghi filed a Second Amended Complaint ("SAC") on June 18, 2013. (Dkt. 7, Exh. F). Like the previous complaint, the defendants in the Second Amended Complaint are Apple and 100 Doe Defendants. (*Id.* at 1). The named plaintiffs are Mr. Missaghi (who is alleged to have owned

---

[2] On March 19, 2013, the *Missaghi* Plaintiff filed a first amended complaint in state court which contained materially identical allegations and the same causes of action with the addition of a second California UCL claim for fraudulent business practices.

United States District Court
For the Northern District of California

an iPhone 4S) and Mr. Charles Thompson (who is alleged to have owned an iPhone 4). (*Id.* at 2). As with the prior complaints, the SAC generally alleges that the iPhone 4 contains a defect which causes the power button to become stuck, preventing the consumer from turning on or off the device. (*Id.* at 4). Unlike the previous complaints (and just like the *Hilton* complaint before this Court), the Missaghi plaintiffs now only alleged a cause of action under RICO, 18 U.S.C. §§ 1962(b) and (c), and the California UCL. (*Id.* at 10-13). As with the prior complaints, the Missaghi plaintiffs seek to represent a class of "All purchasers of the IPHONE4 or IPHONE 4S." (*Id.* at 2).

On August 28, 2013, Judge Feess granted the motion to dismiss the SAC. *(Missaghi v. Apple, Inc.*, No. 13-cv-2003, Dkt. No. 33).[3] The court found that the *Missaghi* plaintiffs could not state a RICO or UCL claim because under California law a "manufacturer's duty to consumers is limited to its warranty obligations absent either an affirmative misrepresentation or a safety issue." (*Id.* at 11 (quoting *Oestreicher v. Alienware Corp.*, 322 F. App'x 489, 493 (9th Cir. 2009)). While the *Missaghi* plaintiffs had attempted to describe the alleged defect as a safety issue, the court found such allegations to be too speculative. (*Id.* at 12). More generally, the Court found that the SAC's RICO allegations failed to plead any predicate act with specificity as no specific communications were described. Similarly, the court found that the UCL allegations (which sounded in fraud) failed to meet Rule 9(b)'s heightened pleading standard. (*Id.* at 15). Judge Feess dismissed the SAC with leave to amend, stressing that the Missaghi plaintiffs would be given "**one final** opportunity to file an amended pleading setting forth any and all remaining theories of liability" by September 13, 2013 (*Id.* at 16).

On September 13, 2013, a Third Amended Complaint was filed. (*Missaghi v. Apple, Inc.*, No. 13-cv-2003, Dkt. No. 34).

### III. DISCUSSION

The first-to-file rule is a "'doctrine of federal comity which permits a district court to decline jurisdiction over an action when a complaint involving the same parties and issues has already been filed in another district.'" *Apple Inc. v. Psystar Corp.*, 658 F.3d 1150, 1161 (9th Cir. 2011) (quoting

---

[3] In the same order, Judge Feess denied Apple's motion to compel arbitration. (*Id.* at 9).

5

*Pacesetter Sys. Inc. v. Medtronic, Inc.*, 678 F.2d 93, 94-95 (9th Cir. 1982)). This rule "was developed to 'serve[]the purpose of promoting efficiency well and should not be disregarded lightly.'" *Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 625 (9th Cir. 1991) (quoting *Church of Scientology v. U.S. Dep't of the Army*, 611 F.2d 738, 750 (9th Cir. 1979)). In addition to judicial efficiency, the rule helps "prevent[] the risk of inconsistent decisions that would arise from multiple litigations of identical claims." *Ruckus Wireless, Inc. v. Harris Corp.*, 11-cv-019440-LHK, 2012 WL 588782 (N.D. Cal. Feb. 22, 2012); *see also Church of Scientology*, 611 F.2d at 750 ("The doctrine is designed to avoid placing an unnecessary burden on the federal judiciary, and to avoid the embarrassment of conflicting judgments.").

Under this doctrine, a district court may choose to transfer, stay or dismiss an action where a similar complaint has been filed in another district court. *See Alltrade*, 946 F.2d at 623. The court must consider three threshold factors in deciding whether to apply the first-to-file rule: (1) the chronology of the two actions; (2) the similarity of the parties; and (3) the similarity of the issues. *Ward. v. Follett Corp.*, 158 F.R.D. 645, 648 (N.D. Cal. 1994); *see also Apple Inc.*, 658 F.3d at 1161. However, the first-to-file rule is "not a rigid or inflexible rule to be mechanically applied, but rather is to be applied with a view to the dictates of sound judicial administration." *Pacesetter*, 678 F.2d at 95. Accordingly, a district court is left with the discretion to deviate from the first-to-file rule where equity dictates. *See Alltrade*, 946 F.2d at 628 ("The most basic aspect of the first-to-file rule is that it is discretionary, 'an ample degree of discretion, appropriate for disciplined and experienced judges, must be left to the lower courts.'" (quoting *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183-84 (1952)).

A.  The First-to-File Rule's Threshold Factors Are Satisfied

    1.  The *Missaghi* Action Is the First-Filed Action

As the above factual and procedural background shows, the initial state court complaint in *Missaghi* was filed in on February 14, 2013 – roughly three months before the Plaintiff in this action filed her complaint. *See Outdoor Venture Corp. v. Ronald Mark Associates, Inc.*, No. 13-11-DLB, 2013 WL 2147854, at *12 (E.D. Ky May 15, 2013) ("Where one of the cases was removed from state court, other courts have determined that 'the date of filing in state court [is] the relevant

6

1 benchmark.'" (quoting *Igloo Products Corp. v. The Mounties, Inc.*, 735 F. Supp. 214, 217 (S.D. Tx. 1990)). Accordingly, the *Missaghi* action was commenced prior to this action.

Plaintiff argues, however, that because the Central District of California dismissed Mr. Missaghi's first amended complaint for lack of standing, and because Mr. Missaghi never owned an iPhone 4 (but rather an iPhone 4S), that court did not acquire jurisdiction over the claims involving the iPhone 4 until the *Missaghi* SAC was filed. Thus, because the *Missaghi* Second Amended Complaint was filed *after* this action, Plaintiff argues the First-to-File Rule does not apply.

The Court disagrees. While Judge Feess dismissed the *Missaghi* FAC, in part, for lack of standing, he granted leave to amend, apparently believing that the deficiencies in question could be rectified. Significantly, Plaintiff has cited no case where the purported lack of subject matter jurisdiction over an earlier-filed complaint vitiated the first-to-file rule where subsequent amendment provided jurisdiction, let alone one where the defect was subsequently corrected by amendment. Rather, Plaintiff relies primarily on the general wording of the first-to-file rule that "the court which first acquired jurisdiction should try the lawsuit." *Pacesetter*, 678 F.2d at 95; *see also* Dkt. No. 14, at 2 (citing *Pacesetter*)). However, as the District Court for the District of Columbia has recognized, the *Pacesetter* opinion (and other cases using similar language), have used the phrases "obtain jurisdiction" or "acquire jurisdiction" in a "non-technical manner to mean when the plaintiff commenced the action." *Furniture Brands Int'l, Inc. v. U.S. Int'l Trade Comm'n*, 804 F. Supp. 2d 1, 5 (D.D.C. 2011). In addition, there is the well-settled principle that a court always possesses jurisdiction to determine its jurisdiction. *See, e.g.*, *Herman Family Revocable Trust v. Teddy Bear*, 254 F.3d 802, 807 n.3 (9th Cir. 2001) ("The district court did, of course, have jurisdiction to determine its own jurisdiction."). Accordingly, when the *Missaghi* action was removed to federal court, the Central District of California obtained jurisdiction over an action, the subject of which was an alleged defect in both the iPhone 4 and 4S. Judge Feess' subsequent order

7

dismissing the *Missaghi* first amended complaint with leave to amend did nothing to change this fact.[4]

      The Court finds instructive the Fifth Circuit's opinion in *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599 (5th Cir. 1999). *Cadle* involved a dispute over who owned the right to collect a judgment. Specifically, a Mr. Andrews had served as a guarantor of a loan from a savings association to one of his business ventures. *Id.* at 600. When the business venture defaulted on the loan, the savings association sued Mr. Andrews and obtained a judgment. *Id.* The savings association eventually went bankrupt and The Cadle Company ("Cadle") claimed the right to collect on the judgment against Mr. Andrews. *Id.* at 601. When Mr. Andrews filed for chapter 7 bankruptcy, Cadle filed a complaint before the bankruptcy court to collect. The bankruptcy court dismissed the complaint for lack of standing, finding that the savings association's bankruptcy trustee (rather than Cadle), owned the right to collect the judgment. *Id.* Cadle continued to file amended complaints before the bankruptcy court. *Id.* at 602. While one of its amended complaints was pending before the bankruptcy court, Cadle filed a complaint before the U.S. District Court for the Western District of Texas alleging that Mr. Andrews' wife, daughter, lawyer, and accountant engaged in a RICO conspiracy and fraud to control Andrews' assets and avoid enforcement of the saving associations' judgment. *Id.*

---

[4] The Court also notes that while Judge Feess granted Apple's motions to strike Mr. Missaghi's allegations regarding the model of iPhone he did not purchase, the question of whether Mr. Missaghi had standing to assert these claims was not frivolous.

    Some courts have held that in the consumer class action context, a plaintiff may assert claims, even regarding products they did not purchase, if there are "substantial similarities in the accused products" and "similar misrepresentations across product lines." *Brown v. Hain Celestial Group, Inc.*, 913 F. Supp. 2d 881, 891 (N.D. Cal. 2012). *But see Donohue v. Apple Inc.*, 871 F. Supp. 2d 913, 921022 (N.D. Cal. 2012) ("Courts in this circuit have diverged on the question of whether a named plaintiff has standing to sue on behalf of purchasers of a product that he or she did not purchase."). A number of cases suggest that this inquiry is properly addressed at the class certification stage as opposed to the pleading stage. *See, e.g.*, *Kosta v. Del Monte Corp.*, No. 12-cv-01722-YGR, 2013 WL 2147413, at *15 (N.D. Cal. May 15, 2013) ("Where the allegations indicate sufficient similarity between the products, any concerns regarding material differences in the products can be addressed at the class certification stage."); *Astiana v. Dreyer's Grand Ice Cream, Inc.*, No. C-11-2910 EMC, 2012 WL 2990766, at *13 (N.D. Cal. July 20, 2012) ("In the instant case, Plaintiffs have alleged sufficient similarity between the products they did purchase and those that they did not, any concerns of DGIC and/or the Court about material differences are better addressed at the class certification stage rather than at the 12(b)(6) stage.").

Defendants moved to dismiss the case under the first-to-file rule, arguing that the bankruptcy court proceedings substantially overlapped with the district court case. *Id.* Cadle opposed the motion, arguing that "the first-to-file rule should include a precondition that requires the district court to find proper jurisdiction in the first-filed court before applying the rule at all." *Id.* at 603. The Fifth Circuit rejected this argument, and distinguishing the first-to-file rule from collateral estoppel, it held that

> Because the second-filed court is not binding the litigants before it to a ruling of the first, there is no reason to examine the jurisdiction of the first-filed court. Such a requirement would actually undercut the values of economy, consistency, and comity that the rule is designed to maximize: the jurisdiction ruling of the second-filed court would either conflict with a ruling already made, rehash an issue already decided, or trench on a sister court's treatment of the issue before it has been reached there.

*Id.* at 604. The court held that the district court "properly limited its inquiry to the potential overlap between the two cases." *Id.* at 606.

While the *Cadle* decision is procedurally distinct from this case, it reinforces the principle that in applying the first-to-file rule, courts should be driven by maximizing the principles of economy, consistency, and comity. In this case, these principles militate in favor of applying the first-to-file rule. First, if this Court had to revisit the question of whether the original *Missaghi* plaintiff had standing, it would be "rehash[ing] an issue already decided" and would run the risk of "conflict[ing] with a ruling already made." *Cadle*, 174 F.3d at 604.

Second, even if the Court were to accept Judge Feess' determination that the original *Missaghi* plaintiff lacked standing to assert claims relating to the iPhone 4, the principles underlying the first-to-file rule still would be furthered by applying the rule here. Judge Feess was presented with a case or controversy asserting claims regarding an alleged defect in both the iPhone 4 and 4S. When objections were made regarding the standing of the party, he permitted the *Missaghi* plaintiff to amend his complaint and to add a new party, and the Plaintiff complied. Judge Feess then dismissed the *Missaghi* SAC on the merits (including the iPhone 4 claims). If this Court refuses to apply the first-to-file rule and proceeds with the instant action, it would then have to pass on the merits of identical claims raised in this action. This would result in this Court duplicating the work

9

already done by Judge Feess in dismissing the *Missaghi* SAC, and would risk this Court issuing an inconsistent order on the same claims – the very result the first-to-file rule is designed to avoid. *See Church of Scientology*, 611 F.2d at 750 ("The doctrine is designed to avoid placing an unnecessary burden on the federal judiciary, and to avoid the embarrassment of conflicting judgments."). Additionally, while the *Missaghi* action is still in the pleading stage, Judge Feess has expended judicial resources in resolving, on their merits, Apple's two motions to dismiss and/or strike and its motion to compel. *See Pacesetter*, 678 F.2d at 96 ("Pacesetter correctly asserts that at the time Medtronic moved to dismiss the California action, neither action had proceeded past the pleading stage. However, permitting multiple litigation of these identical claims could serve no purpose of judicial administration, and the risk of conflicting determinations as to the patents' validity and enforceability was clear."). Accordingly, the *Missaghi* action has advanced well ahead of this case.

Plaintiff's residual argument on this point is that the *Missaghi* SAC cannot "relate back" to the *Missaghi* original or FAC under Fed. R. Civ. P. 15 and therefore *Missaghi* should not be deemed to be the "first filed" action. (Dkt. No. 14, at 5). However, the main case upon which Plaintiff relies, *Leal v. Gov. Employees Ins. Co.*, M-09-228, 2009 WL 4852670 (S.D. Tex. Dec. 14, 2009), is inapposite. This case addressed when a class action "commences" for purposes of CAFA in the context of establishing whether removal jurisdiction existed over a case. *See id.* at *3. Significantly, this case did not address the first-to-file rule. *Id.*

This Court has previously addressed the interplay between the first-to-file rule and the relation back doctrine. In *Barnes & Noble, Inc. v. LSI Corp.*, 823 F. Supp. 2d 980 (N.D. Cal. 2011), this Court recognized that there are two lines of cases on this question. First, it noted that a "number of courts have held that the filing of a complaint triggers the first-filed rule, regardless of whether the plaintiff later amends the complaint." *Id.* at 987; *see also Schering Corp. v. Amgen Inc.*, 969 F. Supp. 258, 267 (D.Del. 1997) ("A 'relation-back' inquiry is unnecessary; the point of inquiry is the original complaint, not the amended complaint."); *Advanta Corp. v. Visa U.S.A., Inc.*, 1997 WL 88906, at *3 (E.D.Pa. Feb. 19, 1997) ("Advanta cannot avoid application of the first-filed rule simply by asserting that it would not initially a party to the earlier filed action. The first-filed rule turns on which court first obtains possession of the subject of the dispute, not the parties of the

dispute."). On the other hand, the Court noted that "[o]ther courts have applied the relation back doctrine to determine which case is filed first." *Barnes & Noble*, 823 F. Supp. at 988. Ultimately, this Court was not required to make a definitive choice between these approaches because, on the facts of that case, even the narrower "relation back" approach satisfied the first-to-file chronology requirement. *See id.* at 989.

However, in its discussion, this Court found those cases which held that no relation back inquiry was necessary were "persuasive because they comport with the general liberality of Rule 15." *See id.* at 988 (citing *Conley v. Gibson*, 355 U.S. 41, 48 (1957) ("The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits."), *abrogated on other grounds by Bell Atlantic Corp.*, 550 U.S. 544)). In addition, the Court found interpreting the first-to-file rule as automatically encompassing any amendments to the complaint would comport with the analysis in *Rockwell Int'l Corp. v. United States*, 549 U.S. 457 (2007), where the Supreme Court held that "when a plaintiff files a complaint in federal court and then voluntarily amends the complaint, courts look to the amended complaint to determine jurisdiction." *Id.* at 474. Finally, as this Court recognized, a number of courts have adopted this approach. *See, e.g.*, *Time Warner Cable, Inc. v. GPNE Corp.*, 497 F. Supp. 2d 584, 589 (D. Del. 2007) (holding no relation back analysis under Rule 15 is necessary in first-to-file determinations); *Versus Tech., Inc. v. Hillenbrand Indus., Inc.*, No. 1:04-cv-168, 2004 WL 3457629 (W.D. Mich. Nov. 14, 2012) (holding relation back analysis unnecessary and that this rule "facilitates the policies of the first-to-file rule by allowing the first court in which all issues are raised to determine how the cases should proceed"). Finally, finding a relation-back analysis unnecessary in the context of the first-to-file rule comports with the purpose and facet of that rule as discussed above. Accordingly, the Court finds that no relation-back analysis is required.

Accordingly, the Court finds that the Central District of California obtained possession of the subject of the instant case – whether the iPhone 4 possesses a defect in its power button of which Apple allegedly was aware and failed to disclose – before the filing of this action.

### 2. The Parties Are Substantially Similar for Purposes of the First-to-File Rule

The first-to-file rule only requires that the parties between the earlier and later cases be substantially similar. *See, e.g.*, *PETA, Inc. v. Beyond the Frame, LTD*, No. CV 10-07576 MMM, 2011 WL 686158 (C.D. Cal. Feb. 16, 2011) ("Indeed, the first-to-file rule does not require identical parties *or* issues, so long as the actions are substantially similar or involve substantial overlap."); *District Council 37 Health & Security Plan v. McKesson Corp.*, No. C06-00718 SBA, 2006 WL 1305235 (N.D. Cal. May 11, 2006) ( "'Exact parallelism between the two actions need not exist; it is enough if the parties and issues in the two actions are substantially similar.'" (quoting *Alioto v. Hoiles*, No. C 04-1395 PJH, 2004 WL 2326367, at *5 (N.D. Cal. Oct. 12, 2004)).

Here, the named plaintiffs in the instant action and in the *Missaghi* action are different. In class actions where a class has not yet been certified, some courts have compared only the named plaintiffs from the earlier and later filed action in applying the first-to-file rule. *See, e.g.*, *Lac Anh Le v. PricewaterhouseCoopers LLP*, No. C-07-5476 MMC, 2008 WL 618938, at *1 (N.D. Cal. Mar. 4, 2008) (denying a first-to-file motion on the ground that the named plaintiffs in the earlier and later filed action are not the same, but denying the motion without prejudice to see if the earlier filed class would be certified).

However, other courts have applied what appears to be a more sensible rule – that the *putative* classes of the two cases should be compared. *See, e.g.*, *Ruff v. Del Monte Corp.*, No. 12-05251 JSW, 2013 WL 1435230, at *3 (N.D. Cal. Apr. 9, 2013) ("Further, all three plaintiffs bring their claims on behalf of nationwide classes that are substantially similar in scope."); *Adoma v. University of Phoenix, Inc.*, 711 F. Supp. 2d 1142, 1147 (E.D. Cal. 2010) ("Here, the named defendants in *Sabol* and *Adoma* actions are identical. Moreover, the proposed classes for the collective actions are substantially similar in that both classes seek to represent at least some of the same individuals."); *Ross v. U.S. Bank Nat'l Ass'n*, 542 F. Supp. 2d 1014, 10120 (N.D. Cal. 2008) ("In a class action, the classes, and not the class representatives, are compared."). If the first-to-file rule were to require a strict comparison only of the named plaintiffs in the two actions, the rule would almost never apply in class actions. This result would be in direct conflict to the purposes of the first-to-file rule because class actions are frequently complex affairs which tax judicial resources

1  – the very cases in which the principles of avoiding duplicative proceedings and inconsistent
2  holdings are at their zenith. *Cf. Mayfield v. Barr*, 985 F.2d 1090 (D.C. Cir. 1993) (recognizing that
3  class actions are "often complex, drawn out proceedings demanding a large share of finite judicial
4  resources").

5  Comparing the class Plaintiff seeks to represent in this action with the proposed class in
6  *Missaghi*, it is evident that an identity of parties exists. Plaintiff here purports to represent a class of
7  all individuals who have purchased an iPhone 4. (Dkt. No. 1, at 13). The *Missaghi* plaintiffs seek to
8  represent a class of all purchases of the iPhone 4 or iPhone 4S. (Dkt. No. 7-7, at 2). Accordingly,
9  Plaintiff in this case (and every member of the proposed class) is subsumed into the proposed class
10 in *Missaghi*.

11 Plaintiff argues, however, that the Supreme Court case of *Smith v. Bayer Corp.*, 131 S. Ct.
12 2368 (2011), precludes the comparison of proposed classes for purposes of the first-to-file rule. In
13 *Bayer*, Bayer Corporation sought an injunction from a federal district court ordering a West Virginia
14 state court to not consider a motion for class certification brought by Mr. Smith. *Id.* at 2374. Bayer
15 had successfully defeated a motion for class certification before the federal district court. *Id.* The
16 motion for class certification in the West Virginia state court raised similar state law issues as the
17 class certification motion Bayer had defeated in federal court. *Id.* at 2373. Bayer argued that
18 because the proposed class in the state law case was identical to the class the federal district court
19 had rejected and, as a result, an injunction order "to protect the District Court's judgment in [the
20 federal suit] denying class certification." *Id.* at 2374. The district court granted the injunction and
21 the Eighth Circuit affirmed. *Id.*

22 The Supreme Court reversed. Bayer argued that the state court litigant was an "unnamed
23 member" of the proposed federal class that the federal district court had rejected and was therefore
24 bound by the federal court's judgment. *Id.* at 2379. The Supreme Court rejected this argument. The
25 Court reasoned:

26 > And we have . . . held that an unnamed member of a *certified* class
> may be 'considered a party for the [particular] purpos[e] of appealing'
27 > an adverse judgment. But as the dissent in *Devlin* noted, no one in
> that case was 'willing to advance the novel and surely erroneous
28

13

> argument that a nonnamed class member is a party to the class-action litigation *before the class is certified*.

*Id.* at 2379 (citations omitted). Thus, the Court found that the "definition of the term 'party' can on no account be stretched so far as to cover a person like [the state court litigant], whom the plaintiff in a lawsuit was denied leave to represent." *Id.* Thus, from *Bayer*, the Plaintiff in this action seeks to argue that the instant action and *Missaghi* cannot have an "identity of parties" until the classes are certified.

However, *Bayer* addressed a situation where a party sought to *bind* an individual to the prior determination of a court. Due process concerns would be raised if a party could be bound to a court's judgment without having had an opportunity (either directly or through a properly certified class representative) to be heard. By contrast, in a first-to-file situation such as that presented in this case, the Plaintiff is not being bound by any other judgment. Rather, the rule merely determines which court is the most appropriate venue. Indeed, the District of New Jersey has rejected the precise *Bayer* argument raised by Plaintiff in the context of the first-to-file rule. *See Worthington v. Bayer Healthcare, LLC*, No. 11-2793 (ES), 2012 WL 1079716, at *6 (D.N.J. Mar. 30, 2012) ("*Smith* addresses claim preclusion, not the first-filed rule, which is based primarily on 'encourag[ing] sound judicial administration and promot[ing] comity among federal courts of equal rank.'" (citation omitted)); *cf. Cadle*, 174 F.3d at 604 (distinguishing the "forward-looking" first-to-file rule from the "backward-looking" doctrine of collateral estoppel because in the former, the "second-filed court is not binding the litigants before it to a ruling of the first").

Accordingly, the Court finds the parties in the instant action are substantially similar to those in *Missaghi*.

### 3. The Claims in *Missaghi* Are Substantially Similar

For the reasons expressed in Apple's motion, the facts and claims raised by the instant case and *Missaghi* are substantially similar. Specifically, both involve an alleged defect to the iPhone 4's power button which renders the phone unusable. While the *Missaghi* action originally only alleged warranty claims that have never been asserted in the instant case, both cases now allege solely a RICO conspiracy and a California UCL claim.

Plaintiff does not argue that the claims are dissimilar.

B.  No Exception to the First-to-File Rule Is Present

Just because the three threshold requirements for the first-to-file rule applies, does not mean the court is obligated to stay, dismiss, or transfer this case.

The first-to-file rule is "not a rigid or inflexible rule to be mechanically applied, but rather is to be applied with a view to the dictates of sound judicial administration." *Pacesetter*, 678 F.2d at 95. Accordingly, a district court is left with the discretion to deviate from the first-to-file rule where equity dictates. *See Alltrade*, 946 F.2d at 628 ("The most basic aspect of the first-to-file rule is that it is discretionary, 'an ample degree of discretion, appropriate for disciplined and experienced judges, must be left to the lower courts.'" (quoting *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183-84 (1952)). However, "[a] court's decision to depart from this general rule must present 'a sound reason that would make it unjust or inefficient to continue the first-filed action.'" *Barnes & Nobles, Inc.*, 823 F. Supp. 2d at 987 (quoting *Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931, 938 (Fed. Cir. 1993), *abrogated on other grounds by Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995)).

Courts have declined to apply the first-to-file rule where the party invoking it has filed an anticipatory suit or otherwise engaged in bad faith or forum shopping. *See Alltrade*, 946 F.2d at 628.[5] "Other circumstances may also warrant a rejection of the first-to-file rule – e.g., balance of convenience or sound judicial administration." *Barnes & Noble*, 823 F. Supp. 2d at 991.

Plaintiff argues that the first-to-file rule should not be applied, because the *Missaghi* SAC is "nothing more than a 'copy and paste' job of the original RICO pleading first made in Hilton's Class Action Complaint." (Dkt. No. 14, at 6). It is true that the *Missaghi* SAC contains material similarities to Plaintiff's complaint in this action. However, it does not follow that it would be inequitable to apply the first-to-file action. Even before the *Missaghi* SAC, the original and

---

[5] "A suit is anticipatory when the plaintiff filed upon receipt of specific, concrete indications that a suit by defendant was imminent." *Liberty Surplus Ins. Corp. v. Perma-Pipe, Inc.*, No. C 13-0908, 2013 WL 4529473, at *3 (N.D. Cal. Aug. 26, 2013) (citation omitted).

amended complaints in *Missaghi* alleged defects in the iPhone 4's power button and alleged damages similar to those in the present complaint, but did so months before this case was filed.

Similarly, Plaintiff argues that Apple is merely "forum shopping" because it has not sought to transfer *Missaghi* to the Northern District of California where its corporate headquarters (and thus most of the witnesses and evidence needed for the case) are located. She argues that the failure to seek this "straightforward solution" to the problem of inefficiency and duplication of efforts shows that it simply "disfavors litigating before this Court or against this party." (Dkt. No. 14). Even if one were to assume Apple likely believes it will benefit from having this case before Judge Feess (who has now dismissed with leave to amend the *Missaghi* SAC on the merits), this is not a typical case of "forum shopping." This is not a case where a defendant, facing a prospective lawsuit in one forum, races to a different courthouse and files a declaratory judgment action in a different forum. Here, Apple was sued by another party and has diligently sought to litigate that case. Accordingly, Apple did not choose the first forum. There is no evidence (or accusation) that the *Missaghi* case is the result of collusion between Apple and the *Missaghi* plaintiffs.

Accordingly, there does not appear to be any conduct by Apple in the course of either this litigation or *Missaghi* that would counsel against application of the first-to-file rule.[6]

Finally, to the extent that Plaintiff argues that the balance of convenience factors weigh in favor of this case being litigated in this district, the case law makes clear that such arguments are properly reserved for the forum where the first-filed action is pending. *See, e.g.*, *Alltrade*, 946 F.2d at 628 ("As for the respective convenience of the two courts, "normally [this argument] should be addressed to the court in the first-filed action. Apprehension that the first court would fail to appropriately consider the convenience of the parties and the witnesses should not be a matter for our consideration.").

C. This Case Should Either Be Stayed or Transferred, Not Dismissed

Having determined that the first-to-file rule applies, the Court must determine the proper course of action. Where the first-to-file rule applies, a district court has the discretion to stay,

---

[6] Plaintiff also does not argue that the *Missaghi* plaintiff somehow ran to the courthouse with the intention of being the first filed lawsuit over this issue.

16

dismiss, or transfer the later-filed case. *See Alltrade*, 946 F.2d at 623 ("[T]he well-established 'first to file rule,' which allows a district court to transfer, stay, or dismiss an action when a similar complaint has already been filed in another federal court . . . ."). However, "where the first-filed action presents a likelihood of dismissal, the second-filed suit should be stayed, rather than dismissed." *Id.* at 629.

Here, there is clearly a chance that the *Missaghi* action will be dismissed, as Judge Feess has dismissed the *Missaghi* SAC with leave to amend. Accordingly, it appears that dismissal of this action would be inefficient. Apple provides no argument for why dismissal is appropriate.

However, Apple has not expressly requested a transfer of this case to the Central District of California where it could, perhaps, be consolidated with *Missaghi* or at least given coordinated treatment. A transfer appears to be the most convenient remedy for all involved – the cases would before a single judge who could coordinate if not consolidate the proceedings. Plaintiff here would have her claims considered, and Apple would not have to simultaneously or consecutively deal with essentially similar claims.

While Apple has not expressly requested a transfer, there is authority supporting a district court *sua sponte* transferring under the first-to-file rule. *See Barbour Group v. Encon Int'l*, No. 12-cv-2557-JAR-KMH, 2013 WL 3781505 (D. Kan. July 18, 2013) ("[T]he Court may nevertheless transfer this case to the Court hearing the Kansas Action sua sponte under the first-to-file rule."); *PETA*, 2011 WL 686158, at *2 ("A court may transfer an action under the first to file rule or 28 U.S.C. § 1404 either *sua sponte*, or upon motion of a party."); *Walker Group, Inc. v. First Layer Commc'ns, Inc.*, 333 F. Supp. 2d 456, 460 (M.D.N.C. 2004) ("One alternative before the Court is to, sua sponte, transfer the matter to Colorado where it could be consolidated with the Colorado action. Relevant case law suggests that transferring the matter to the court in which the first-filed case is being adjudicated, which in this case is the Colorado court, is the preferred action." (citation omitted)).

The Court believes transferring this action to the Central District of California would be more efficient than simply staying this action pending the result in *Missaghi*. First, the issues raised are identical, so coordinated treatment would reduce the cost to the parties and the courts. Second,

17

even if the *Missaghi* action were dismissed, the Court would be inclined to continue any stay over this action pending the result of any appeal to the Ninth Circuit.

Accordingly, the parties are **ORDERED TO SHOW CAUSE** as to why this action should not be transferred to the Central District of California. The parties' responses are due to the Court within 10 days of this order and shall not exceed five (5) pages, double spaced.

## IV. CONCLUSION

For the foregoing reasons, the Court finds that the first-to-file rule is applicable and orders the parties to show cause why this action should not be transferred to the Central District of California.

Defendant's Motions to Dismiss and/or Strike the Complaint and Motion to Compel Arbitration are **DENIED** as moot.

This order disposes of Docket Nos. 6, 7 and 11.

IT IS SO ORDERED.

Dated: October 1, 2013

_____
EDWARD M. CHEN
United States District Judge

18