RICHARD B. GOETZ (S.B. #115666)
rgoetz@omm.com
KELSEY M. LARSON (S.B. #267982)
klarson@omm.com
O'MELVENY & MYERS LLP
400 S. Hope Street
Los Angeles, CA 90071-2899
Telephone:   (213) 430-6000
Facsimile:    (213) 430-6407

MATTHEW D. POWERS (S.B. #212682)
mpowers@omm.com
O'MELVENY & MYERS LLP
Two Embarcadero Center, 28th Floor
San Francisco, CA 94111-3823
Telephone:  (415) 984-8700
Facsimile:   (415) 984-8701

Attorneys for Defendant
Apple Inc.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| DEBRA HILTON, on Behalf of Herself And All Others Similarly Situated,<br><br>                    Plaintiffs,<br><br>        v.<br><br>APPLE INC.,<br><br>                    Defendant. | Case No. 2:13-CV-7674-GAF-AJW<br><br>**DEFENDANT APPLE INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS AND/OR TO STRIKE FIRST AMENDED COMPLAINT**<br><br>Hearing Date: April 21, 2014<br>Time:            9:30 a.m.<br>Judge:          Hon. Gary A. Feess<br>Courtroom:    740 |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION .............................................................................................. 1

II. PLAINTIFF'S ATTEMPT TO APPLY "BOTH" THE UCL AND FDUTPA IS ABSURD ................................................................................ 5

III. PLAINTIFF CANNOT STATE A CLAIM UNDER THE FDUTPA IN ANY EVENT. .............................................................................................. 8

    A.    Plaintiff's Claim Is Inconsistent with Florida Law and Common Sense. ...................................................................................................... 8

    B.    Plaintiff's FDUTPA Claim Fails as a Matter of Pleading. ................. 13

IV. PLAINTIFF'S FDUTPA ALLEGATIONS DO NOT SATISFY THE REQUIREMENTS OF RULE 9(B). ............................................................. 15

V. CUSTOMERS WHOSE IPHONES WORKED WELL FOR YEARS HAVE NO POSSIBLE "INJURY" CLAIM. .............................................. 17

VI. PLAINTIFF LACKS STANDING TO SEEK AN INJUNCTION. ............. 21

VII. CONCLUSION ............................................................................................. 21

# TABLE OF AUTHORITIES

**Page**

<u>CASES</u>

*AirWatch, LLC v. Mobile Iron, Inc.*,
 No. 12-CV-3571, 2013 WL 4757491 (N.D. Ga. Sept. 4, 2013) ........................7

*Apodaca v. Whirlpool Corp.*,
 SACV 13-00725 JVS, 2013 WL 6477821 (C.D. Cal. Nov. 8, 2013) ...............15

*Breakstone v. Caterpillar, Inc.*,
 No. 09-23324-CIV, 2010 WL 216440 (S.D. Fla. May 26, 2010)...............10, 19

*Campion v. Old Republic Home Prot. Co.*,
 861 F. Supp. 2d 1139 (S.D. Cal. 2012) ...............................................................21

*Collins v. DaimlerChrysler Corp.*,
 894 So. 2d 988 (Fla. Dist. Ct. App. 2004)...........................................4, 9, 10, 18

*Comcast Corp. v. Behrend*,
 133 S. Ct. 1426, 185 L. Ed. 2d 515 (2013) .......................................................19

*DaimlerChrysler Corp. v. Inman*,
 121 S.W.3d 862 (Tex. Ct. App. 2003) ...............................................................19

*Daugherty v. Am. Honda Motor Co.*,
 144 Cal. App. 4th 824 (2006)...................................................................6, 9, 11

*Downing v. Abercrombie & Fitch*,
 265 F.3d 994 (9th Cir. 2001) ...............................................................................5

*Dremak v. Iovate Health Scis. Grp.*,
 No. 09cv1088 BTM (KSC), 2014 U.S. Dist. LEXIS 11750 (S.D.
 Cal. Jan. 27, 2014) .............................................................................................15

*Gen. Motors Acceptance Corp. v. Laesser*,
 718 So. 2d 276 (Fla. Dist. Ct. App. 1998)..........................................................16

*Gest v. Bradbury*,
 443 F.3d 1177 (9th Cir. 2006) ...............................................................................5

*Greenfield v. Sears, Roebuck & Co.*,
 No. MDL-1703, 2012 WL 1015806 (N.D. Ill. Mar. 22, 2012).....................4, 16

*Ho v. Toyota Motor Corp.*,
 931 F. Supp. 2d 987 (N.D. Cal. 2013)................................................................11

APPLE INC.'S REPLY ISO MOT. TO
DISMISS AND/OR TO STRIKE FAC
CASE NO. 2:13-CV-7674-GAF (AJW)

*Hovsepian v. Apple, Inc.*,
  No. 05-5788 JF (PVT), 2009 WL 5069144 (N.D. Cal. Dec. 17,
  2009) .................................................................................................... 18, 21

*Hutson v. Rexall Sundown, Inc.*,
  837 So. 2d 1090 (Fla. Dist. Ct. App. 2003) ........................................ 16

*In re Bridgestone/Firestone, Inc.*,
  288 F.3d 1012 (7th Cir. 2002) ............................................................. 20

*In re Sony Grand WEGA KDF-E A10/A20 Series Rear Projection
  HDTV Television Litig.*,
  758 F. Supp. 2d 1077 (S.D. Cal. 2010) ................................................ 9

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales
  Practices, & Products Liab. Litig.*,
  287 F.R.D. 614 (C.D. Cal. 2013) ........................................................ 19

*In re Toyota Motor Corp.*,
  No. 8:10ML 02151 JVS (FMOx), 2012 U.S. Dist. LEXIS 189744
  (C.D. Cal. May 4, 2012) ........................................................ 4, 10, 19, 20

*JMP Sec. LLP v. Altair Nanotechnologies Inc.*,
  No. 11-4498 SC, 2012 WL 892157 (N.D. Cal. Mar. 14, 2012) ...................... 1, 5

*Kamm v. Cal. City Dev. Co.*,
  509 F.2d 205 (9th Cir. 1975) ............................................................... 18

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009) ............................................................. 16

*Kia Motors of Am. Corp. v. Butler*,
  985 So. 2d 1133 (Fla. Dist. Ct. App. 2008) ........................... 5, 10, 19, 20

*Marolda v. Symantec Corp.*,
  672 F. Supp. 2d 992 (N.D. Cal. 2009) .................................................. 16

*Matthews v. Am. Honda Motor Co.*,
  No. 12-60630-CIV, 2012 WL 2520675 (S.D. Fla. June 6, 2012) ........ 3, 9, 10, 14

*Maxcess, Inc. v. Lucent Technologies, Inc.*,
  No. 04-CV-204, 2005 WL 6124571 (M.D. Fla. Jan. 5, 2005) ........................... 12

*Millennium Commc'ns & Fulfillment, Inc. v. Office of the Attorney
  Gen.*,
  761 So. 2d 1256 (Fla. Dist. Ct. App. 2000) ...................................... 3, 9

*Missud v. Oakland Coliseum Joint Venture*,
  No. 12-02967 JCS, 2013 WL 812428 (N.D. Cal. Mar. 5, 2013) ...................... 17

APPLE INC.'S REPLY ISO MOT. TO
DISMISS AND/OR TO STRIKE FAC
CASE NO. 2:13-CV-7674-GAF (AJW)

*Oestreicher v. Alienware Corp.*,
   544 F. Supp. 2d 964 (N.D. Cal. 2008)..........................................................11, 15

*Paulus v. Bob Lynch Ford, Inc.*,
   139 Cal. App. 4th 659 (2006) ......................................................................7

*Perret v. Wyndham Vacations Resorts, Inc.*,
   846 F. Supp. 2d 1327 (S.D. Fla. 2012).......................................................16

*Rasmussen v. Apple Inc.*,
   --- F. Supp. 2d ----, 2014 WL 1047091 (N.D. Cal. Mar. 14, 2014) ..................21

*Rollins, Inc. v. Heller*,
   454 So. 2d 580 (Fla. Dist. Ct. App. 1984).................................................12

*Rothstein v. DaimlerChrysler Corp.*,
   No. 8:05-CV-1126, 2005 WL 3093573 (M.D. Fla. Nov. 18, 2005) ....3, 9, 10, 14

*Sanders v. Apple Inc.*,
   672 F. Supp. 2d 978 (N.D. Cal. 2009)........................................................15

*Saunders v. Superior Court*,
   27 Cal. App. 4th 832 (1994) ........................................................................7

*Speyer v. Avis Rent A Car Sys., Inc.*,
   242 F. App'x 474 (9th Cir. 2007)................................................................7

*Speyer v. Avis Rent A Car Sys., Inc.*,
   415 F. Supp. 2d 1090 (S.D. Cal. 2005) ......................................................7

*Sw. Sunsites, Inc. v. FTC*,
   785 F.2d 1431 (9th Cir. 1986) .....................................................................3

*Tietsworth v. Sears, Roebuck & Co.*,
   720 F. Supp. 2d 1123 (N.D. Cal. 2010)......................................................18

*Van Slyke v. Capital One Bank*,
   No. C 07-00671 WHA, 2007 WL 3343943 (N.D. Cal. Nov. 7, 2007) ...........6

*Wal-Mart Stores, Inc. v. Dukes*,
   131 S. Ct. 2541, 180 L. Ed. 2d 374 (2011) ..............................................19

*Williamson v. Apple Inc.*,
   No. 11-CV-377, 2012 WL 3835104 (N.D. Cal. Sept. 4, 2012) .....................14

*Wilson v. Hewlett-Packard Co.*,
   668 F.3d 1136 (9th Cir. 2012) ...................................................................14

*Wolin v. Land Rover N. Am., LLC,*
    617 F.3d 1168 (9th Cir. 2010) ............................................................................. 19

*Zlotnick v. Premier Sales Grp.,*
    480 F.3d 1281 (11th Cir. 2007) ........................................................................... 12

## **OTHER AUTHORITIES**

*Bus. & Prof. C. §17200 Practice* (The Rutter Group) ............................................... 6

## **RULES**

Fed. R. Civ. P. 9 .......................................................................................................... 15

Fed. R. Civ. P. 9(b) ............................................................................................... 4, 15

## I.      **INTRODUCTION**

In her Opposition, Plaintiff does not dispute that (as this Court has already held) the claims she seeks to assert under the UCL are barred by California law.[1] Instead, she argues that the consumer protection laws of **both** California and Florida should apply to her claims, and that under Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), she should be permitted to assert the kinds of "post-warranty" product malfunction claims that California courts have rejected.  None of the arguments in Plaintiff's Opposition can save her claims in this case.

***First***, Plaintiff's attempt to simultaneously apply the laws of two different jurisdictions to the same claim should be rejected out of hand.  As discussed below, Plaintiff has misread Florida law—under the FDUTPA, "failing" to expressly tell consumers that there is a chance that a part might wear out ***after*** the warranty expires is not a "deceptive" practice.  But if Plaintiff's reading of the FDUTPA were correct (it is not), then it would be logically impossible for both states' laws to apply at the same time.  None of the cases Plaintiff cites endorses her attempt to apply both sets of laws simultaneously—instead, either California's consumer protection law applies to a particular claim,[2] or Florida's law applies.  *See JMP Sec. LLP v. Altair Nanotechnologies Inc.*, No. 11-4498 SC, 2012 WL 892157, at *4 (N.D. Cal. Mar. 14, 2012) ("[T]he Court applies the correct choice-of-law rules to determine which substantive law applies to each claim.  Only then may the Court proceed to the merits and apply the correct substantive law.").  And here, if Plaintiff's interpretation of the FDUTPA were correct (as discussed below, it is

---

[1] 1/19/2014 Order Re: Motions to Compel Arbitration, Dismiss, & Strike [Dkt. #46] at 11 ("Finally, under California law, Apple did not have a duty to disclose the potential defect …. For this reason, and for the reasons given above, Plaintiff has failed to support her UCL claim.").

[2] As the Court is aware, in her prior complaint Plaintiff asserted that California law (***not*** Florida law) applied to her claims in this case.  (5/10/2013 Complaint ("Compl.") [Dkt. #1] ¶¶ 1, 72-79.)

APPLE INC.'S REPLY ISO MOT. TO
DISMISS AND/OR TO STRIKE FAC
CASE NO. 2:13-CV-7674-GAF (AJW)

not), then the two laws that Plaintiff argues should "both" apply are in ***direct conflict*** because California's courts have rejected the claims that Plaintiff seeks to assert under Florida law.  Plaintiff's argument that "both" statutes should apply here is thus absurd—yet Plaintiff's Opposition never even mentions (much less justifies) the bizarre conflict that Plaintiff's novel position would create.

***Second***, the Court need not reach those choice-of-law issues because Plaintiff's interpretation of the FDUTPA is also flawed—both as a matter of law and as a matter of common sense.  The "undisclosed defect" at issue here is that a button on some customers' iPhones (not all, and not even most)[3] allegedly wore out months or years after the warranty expired.  (*See, e.g.*, Opp. at 6.)  Here, it cannot be the case that "failing" to "disclose" the risk that a product like an iPhone could break after the warranty expires is "deceptive" in any way.  The "deception" at issue here is an omission—and a critical element of all omission claims is an allegation that the plaintiff was unaware of some important material fact at the time of purchase.  But it is obvious to any reasonable consumer that products like iPhones can sometimes break—particularly in light of Apple's written warranty, which very plainly discloses that sometimes even Apple's products can wear out and malfunction.[4]  To be sure, Plaintiff's complaint describes the ***ways*** in which the

_____

[3] As discussed below, Plaintiff's allegations regarding the prevalence of this "defect" are vague and conclusory boilerplate.  She does not come close to alleging the buttons on most (much less all) iPhone 4 devices experience any sort of malfunction.  (*See infra* Section III.B.)  Nor could Plaintiff possibly allege such facts in good faith.

[4] *See, e.g.*, Request for Judicial Notice ("RJN"), Ex. A (Apple Warranty) [Dkt. #57-2] at 1 (warranty covers "defects in materials and workmanship … for a period of ONE (1) YEAR …."); at 2 (describing repair and service options for customers, including "WHAT … APPLE [WILL] DO IN THE EVENT THE WARRANTY IS BREACHED" and "HOW TO OBTAIN WARRANTY SERVICE" for repairing defects that arise under the warranty); & at 1 (stating that "Apple does not warrant that the operation of the Apple Product will be uninterrupted or error-free" under heading "WHAT IS NOT COVERED BY THIS WARRANTY?").

button can allegedly wear out after extended use.  (*E.g.*, First Amended Complaint ("FAC") [Dkt. #51] ¶¶ 14, 25.)  But Plaintiff's attempt to recast the unsurprising fact that parts can wear out after the warranty expires as a "defect" does not transform it into a "material fact" that was unknown to consumers when they bought their devices.

Under the FDUTPA, Plaintiff must plead facts to establish that Apple engaged in a "deceptive" practice, *i.e.*, one that "is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment."  *Millennium Commc'ns & Fulfillment, Inc. v. Office of the Attorney Gen.*, 761 So. 2d 1256, 1263 (Fla. Dist. Ct. App. 2000) (citing *Sw. Sunsites, Inc. v. FTC*, 785 F.2d 1431, 1434-35 (9th Cir. 1986)).  No "consumer acting reasonably" could expect that its iPhone 4 was guaranteed to remain 100% defect-free for months or years after the warranty expired.  But that is exactly what Plaintiff contends:  According to Plaintiff, selling a product is "deceptive" unless manufacturers affirmatively disclose the ***risk*** that a product might wear out and break (*see* Opp. at 7), even though (1) the malfunction Plaintiff complains of took place long after the warranty expired and (2) Apple's warranty makes plain both that defects are possible and that post-warranty malfunctions are the responsibility of the consumer.  Plaintiff cites no Florida state court authority that has ever adopted this proposition (nor is Apple aware of any), and the cases Plaintiff does cite are inapplicable here.[5]  Under Plaintiff's

---

[5] The two key federal district court cases Plaintiff cites—*Matthews v. American Honda Motor Co.*, No. 12-60630-CIV, 2012 WL 2520675 (S.D. Fla. June 6, 2012), and *Rothstein v. DaimlerChrysler Corp.*, No. 8:05-CV-1126, 2005 WL 3093573 (M.D. Fla. Nov. 18, 2005)—involved products that were far more durable (cars) and "defects" that were far more significant (brakes that could suddenly fail while driving and paint that almost completely delaminated) than those at issue here.  Those district court cases are not binding interpretations of Florida law, their "analysis" of the issues presented here is cursory at best, and those cases would—if extended and interpreted the way that Plaintiff suggests—mean that virtually every product ever sold in Florida was a violation of the FDUTPA.  No Florida court has followed *Matthews* or *Rothstein*, and the Florida state-court cases that Plaintiff ***does*** cite do not support her arguments.  For example, *Collins v. DaimlerChrysler Corp.*,

APPLE INC.'S REPLY ISO MOT. TO
DISMISS AND/OR TO STRIKE FAC
CASE NO. 2:13-CV-7674-GAF (AJW)

interpretation of Florida law, every consumer product manufacturer would be subject to liability under the FDUTPA for every product ever sold, because there is always a risk that parts can wear out and break, particularly after the warranty expires.

**Third**, Plaintiff's fraud-based FDUTPA allegations do not come close to satisfying Rule 9(b).  In her Opposition, Plaintiff argues that the details of her own purchase and experience with the iPhone are irrelevant because, according to Plaintiff, "reliance is *not* an element of an FDUTPA claim."  (Opp. at 17 (emphasis added).)  But *causation* is an element of n FDUTPA claim, and "the great weight of recent authority" in the Florida state appellate courts "holds that [FDUTPA] causation typically requires individualized proof."  *Greenfield v. Sears, Roebuck & Co.*, No. MDL-1703, 2012 WL 1015806, at *9-10 (N.D. Ill. Mar. 22, 2012).  Yet Plaintiff pleads almost nothing about her own iPhone 4 purchase—she never identifies what advertisements or marketing statements she saw (much less relied on) before purchasing her phone, and she never explains exactly what information Apple should have disclosed to her, or where (*i.e.*, in what document or statement) those disclosure(s) should have occurred.

**Finally**, Plaintiff's class definition and claim for injunctive relief suffer from incurable defects and, accordingly, should be stricken.  Plaintiff's class definition includes **all** iPhone 4 purchasers in Florida (*see* FAC ¶ 38), even those consumers who have never experienced any issues with their devices' power buttons (or who had the buttons repaired, for free, under Apple's warranty).  The iPhone 4 has been

---

894 So. 2d 988 (Fla. Dist. Ct. App. 2004), held that the impact of a serious safety issue (defective seat belts) on a car's value could constitute "actual damages" under the FDUTPA—not that plaintiffs could bring a FDUTPA claim based on a defendant's alleged "failure" to disclose that parts wear out **after** the warranty expires.  Moreover, *Collins* is inconsistent with later Florida decisions: "Florida courts have followed a different path as to the manifestation of defect issue [in the years] since *Collins* [was decided]."  *In re Toyota Motor Corp.*, No. 8:10ML 02151 JVS (FMOx), 2012 U.S. Dist. LEXIS 189744, at *235 (C.D. Cal. May 4, 2012).

APPLE INC.'S REPLY ISO MOT. TO
DISMISS AND/OR TO STRIKE FAC
CASE NO. 2:13-CV-7674-GAF (AJW)

on the market for almost four years—and a customer whose iPhone has worked

properly for years cannot possibly claim to be injured under any theory of liability.

*See Kia Motors Am. Corp. v. Butler*, 985 So. 2d 1133, 1139 (Fla. Dist. Ct. App.

2008) (rejecting FDUTPA claims by plaintiffs whose vehicles did not experience a

manifestation of alleged defect).  Yet Plaintiff's class definition expressly (and

impermissibly) includes those non-injured consumers.  Similarly, Plaintiff has not

shown (and cannot show) that she has standing to seek injunctive relief, as she is

not realistically threatened by a repetition of the violation that she seeks to enjoin.

*Gest v. Bradbury*, 443 F.3d 1177, 1181 (9th Cir. 2006).

Plaintiff's current complaint reflects the third in a series of novel (but flawed)

legal theories—Plaintiff first attempted to allege a criminal "racketeering"

conspiracy under RICO, then abandoned that position to argue (in her January 6,

2014 Supplemental Brief) that Apple had violated the FTCA, then abandoned ***that***

position to claim (in her current complaint) that she should be able to assert a new

kind of "hybrid" claim that simultaneously applies both California and Florida law.

(*See* Compl. ¶¶ 56-71; 1/6/2014 Supplemental Brief [Dkt. #45] at 3-4; FAC

¶¶ 46-55.)  Since she has no claim under either state's law, it is time to dismiss her

complaint with prejudice.

## II.    PLAINTIFF'S ATTEMPT TO APPLY "BOTH" THE UCL AND FDUTPA IS ABSURD.

Plaintiff's dual UCL/FDUTPA claim must be dismissed because both laws

cannot apply to the same claim at the same time.  To be sure, sometimes different

laws can apply to ***different*** issues in the same case.  But that is not what Plaintiff

seeks to do.  Instead, Plaintiff seeks to apply two conflicting states' laws to the

***same*** issue—a position that is fundamentally inconsistent with basic choice-of-law

jurisprudence.  *See Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1005-07 (9th

Cir. 2001) (courts apply choice-of-law rules to determine ***which*** state's substantive

law applies to a particular issue) (emphasis added); *JMP Sec. LLP*, 2012 WL

892157, at *4 ("[T]he Court applies the correct choice-of-law rules to determine which substantive law applies to each claim.  Only then may the Court proceed to the merits and apply the correct substantive law.") (internal citation omitted).

As Apple explained in its opening brief, no court has ever permitted a Plaintiff to base an "unlawful" UCL claim on a different state's law.[6]  But more fundamentally, Plaintiff's Opposition does not even acknowledge (much less address) the core problem with her attempt to do so here:  According to Plaintiff, the two laws she seeks to apply conflict.  Indeed, Plaintiff's entire Opposition is based on the premise that the FDUTPA is different from—and, in fact, directly conflicts with—California's UCL regarding the viability of Plaintiff's "omission" claim.  (*See* Opp. at 3 (California's "'duty to disclose' rationale, however, has no application to Hilton's current claim premised on an FDUTPA violation"); *id.* ("Apple's resort to California cases that address such a duty … has no bearing on the viability of Hilton's current pleading").)

As explained below, Plaintiff's interpretation of Florida law is incorrect and she cannot state a claim under the FDUTPA.  But if the Court were to adopt Plaintiff's view of the FDUTPA, her FDUTPA-based claim would be fundamentally inconsistent with California's own established laws and public policies.  *See Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824 (2006); *see also Bus. & Prof. C. §17200 Practice* § 7:105 (The Rutter Group) ("[I]t is doubtful whether another state's or another country's laws could be 'imported,' and thus be made enforceable, via a § 17200 cause of action, unless California itself has deemed the challenged practice 'unlawful.'").  Rather than address the serious conflicts problems her position would create, in her Opposition Plaintiff simply

---

[6] In fact, at least one district court has expressly rejected it.  *See Van Slyke v. Capital One Bank*, No. C 07-00671 WHA, 2007 WL 3343943, at *14 (N.D. Cal. Nov. 7, 2007) (rejecting attempt to plead "unlawful" UCL claim based on violations of other state's laws).

1    pretends that those problems do not exist.  (*See* Opp. at 14-16.)

2        Nor do any of the cases Plaintiff cites support her position that both the UCL

3    and the FDUTPA can apply simultaneously.  For example, Plaintiff cites *AirWatch*

4    *LLC v. Mobile Iron, Inc.*, No. 1:12-CV-3571-JEC, 2013 WL 4757491 (N.D. Ga.

5    Sept. 4, 2013), for the proposition that "non-California federal courts [in] other

6    states have held that a plaintiff can predicate a UCL claim based on a violation of

7    another state's laws."  (Opp. at 16.)  But *AirWatch* held no such thing—there, the

8    "unlawful" UCL claim was premised on the federal Consumer Fraud and Abuse

9    Act ("CFAA"), not on another state's law.  *See* 2013 WL 4757491, at *7 & n.9.

10   And while both federal and state law can apply simultaneously, there are

11   established doctrines (*e.g.*, preemption) that apply when state and federal laws

12   conflict.  Next, the "unlawful" claim in *Speyer v. Avis Rent A Car System, Inc.*, 242

13   F. App'x 474 (9th Cir. 2007), was based solely on an alleged violation of Cal. Civ.

14   Code § 1936, as the district court opinion makes clear (*see Speyer v. Avis Rent A*

15   *Car Sys., Inc.*, 415 F. Supp. 2d 1090, 1098 (S.D. Cal. 2005)), and the Ninth Circuit

16   explicitly stated in *Speyer* (which is unpublished in any event) that it "need not

17   determine the reach of California's unfair competition law."  242 F. App'x at 474.[7]

18       Plaintiff has already acknowledged that California law governs her claims in

19   this case—in her original complaint, she contended that Apple's conduct was

20   governed by California law, and still takes that position today.  (*See also* Opp. at 7

21   ("Apple's decision to not disclose the power button defect in any of Apple's

22   representations was made from within Apple's headquarters in California, thereby

23   subjecting Apple to UCL liability.").)  Her new attempt to create a sort of "hybrid"

24   multi-state claim should be rejected out of hand.

---

25

26   [7] Plaintiff also cites a number of cases for the proposition that "virtually any law"
     can serve as a predicate act for an "unlawful" prong claim.  *Paulus v. Bob Lynch*

27   *Ford, Inc.*, 139 Cal. App. 4th 659 (2006), and *Saunders v. Superior Court*, 27 Cal.
     App. 4th 832 (1994).  (*See* Opp. at 15, 16.)  But again, in none of those cases did a

28   plaintiff attempt to use another state's law to support an "unlawful" UCL claim.

APPLE INC.'S REPLY ISO MOT. TO
DISMISS AND/OR TO STRIKE FAC
CASE NO. 2:13-CV-7674-GAF (AJW)

## III. PLAINTIFF CANNOT STATE A CLAIM UNDER THE FDUTPA IN ANY EVENT.

Nor can Plaintiff state a claim under the FDUTPA.  Plaintiff's proposed interpretation of that statute conflicts with Florida law (and with common sense), and key aspects of her theory of liability depend on conclusory boilerplate that is devoid of any actual *facts* to support her contentions.

### A.    Plaintiff's Claim Is Inconsistent with Florida Law and Common Sense.

As Plaintiff admits, the iPhone 4 is "one of the most popular smartphones in the world."  (FAC ¶ 13.)  Since its release in 2010, millions of consumers have used iPhone 4 devices to make calls, surf the Internet, play videos and music, and engage other applications.  Yet according to Plaintiff, all of the millions of iPhone 4 devices sold were so "defective" that literally all customers that bought the phones—even the customers who never experienced a problem and whose phones are still working after more than three years—were "deceived" and injured because the "value" of their phones was "dimini[shed] … as a result of the undisclosed defect."  (Opp. at 19; *see also* Opp. at 8 (arguing that FDUTPA claim depends "on whether the alleged non-disclosure of a defect reduced the product's value").)

Plaintiff's argument fails both as a matter of logic and a matter of law.  The only "defect" Plaintiff identifies is that a button on the iPhone can sometimes wear out and break after the warranty expires, and all of Plaintiff's claims are based on Apple's "non-disclosure" of this "fact."  But that "non-disclosed" "fact" should be obvious to everyone—no reasonable consumer could possibly believe that all of the parts on a device like an iPhone were 100% guaranteed to never wear out or break, even for months or years after the warranty had expired.  And no reasonable consumer could read Apple's written warranty and come away with such an impression.  (*See* FAC ¶ 16; RJN at Ex. A.)  Indeed, Apple's warranty clearly states

APPLE INC.'S REPLY ISO MOT. TO
DISMISS AND/OR TO STRIKE FAC
CASE NO. 2:13-CV-7674-GAF (AJW)

that it will repair any "defects in materials and workmanship" that manifest during the product's first year for free, but that any such problems that manifest afterward are the responsibility of the consumer.  (*Id.*)  "Where a manufacturer has expressly warranted a product, consumers can only expect that product to function properly for the length of the manufacturer's express warranty."  *In re Sony Grand WEGA KDF-E A10/A20 Series Rear Projection HDTV Television Litig.*, 758 F. Supp. 2d 1077, 1089 (S.D. Cal. 2010); *see also Daugherty*, 144 Cal. App. 4th at 838 ("Honda did nothing that was likely to deceive the general public by failing to disclose that its F22 engine might, in the fullness of time, eventually dislodge the front balancer shaft oil seal and cause an oil leak.").  Here, for a consumer to be "misled," she would have to ignore the terms of Apple's warranty and believe (for some unidentified reason) that her iPhone was guaranteed to remain defect-free for months (or years) after the warranty had expired.  There are no facts alleged in the FAC that could support this belief as "reasonable" or demonstrate "probable, not possible, deception" (*see Millennium*, 761 So. 2d at 1263) on the part of Apple. [8]

Yet according to Plaintiff, the fact that Apple's warranty (along with common sense) actually communicated the "facts" that she contends were not "disclosed" is irrelevant under Florida law.  Citing *Rothstein v. DaimlerChrysler Corp.*, 2005 WL 3093573 (M.D. Fla. Nov. 18, 2005), *Collins v. DaimlerChrysler Corp.*, 894 So. 2d 988 (Fla. Dist. Ct. App. 2004), and *Matthews v. American Honda Motor Co.*, 2012 WL 2520675 (S.D. Fla. June 6, 2012), Plaintiff argues that "Apple's premise must be rejected" because, "[under] *Collins*, … even if no defect covered by the warranty *ever* manifests itself … consumer[s] still may have a valid

---

[8] Plaintiff is also incorrect that Apple is attempting to make this case about "reliance."  (*See* Opp. at 10.)  Apple has not "assert[ed]" that reliance is a requirement for a FDUTPA claim, nor is its argument dependent on whether a *particular* consumer ever "relied on any … representation[ ] made by the manufacturer."  (*Id.*)  Instead, the problem with Plaintiff's claim is that she is attempting to sue based on the alleged "non-disclosure" of a "fact" that is obvious to any reasonable consumer.

APPLE INC.'S REPLY ISO MOT. TO
DISMISS AND/OR TO STRIKE FAC
CASE NO. 2:13-CV-7674-GAF (AJW)

FDUTPA claim where the manufacturer's non-disclosure is alleged, as here, to have caused the consumer to overpay for the product."  (Opp. at 8, 9.)

Plaintiff is wrong.  First, as is discussed in more detail below in Section V, the key proposition for which Plaintiff cites *Collins*—that even those customers who never experienced a defect can bring FDUTPA claims—is inconsistent with more recent Florida cases.[9]  But second (and more importantly), the "defects" at issue in *Collins* and *Rothstein* were fundamentally different from those at issue here.  In *Collins*, the plaintiffs alleged that defective seat belts in the defendant's cars would fail to protect passengers in a crash—a serious safety issue that, the Court noted, posed "special reliability concerns" for drivers.  894 So. 2d at 991 n.3. And in *Rothstein*, the plaintiffs alleged that the brakes on their cars could suddenly fail while the car was in operation.  2005 WL 3093573, at *2.  Of course those kinds of safety defects were both "material" and unknown to consumers when they bought their cars; indeed, such defects would curtail *every* consumer's ability to use their vehicles, regardless of whether the "defect" had actually "manifested."  *See, e.g.*, *Collins*, 894 So. 2d at 991 n.3 (owners of vehicles with defective seat belts would have no way of knowing whether they would work "until an unexpected moment of impact").  No reasonable consumer would have been on notice of the kinds of safety risks that were at issue in *Collins* and *Rothstein*.  And while *Matthews v. American Honda Motor Co.*, No. 12-60630-CIV, 2012 WL 2520675 (S.D. Fla. June 6, 2012), did not involve a safety risk, the claims in that case also involved cars—far more durable than smartphones and with much longer useful lives—and the defect at issue impacted an aspect of the vehicle (the paint) that was

---

[9] *Toyota*, 2012 U.S. Dist. LEXIS 189744, at *235 ("Florida courts have followed a different path as to the manifestation of defect issue since *Collins*.").  *See also Kia*, 985 So. 2d at 1139 (FDUTPA affords no relief to plaintiffs whose vehicles did not experience a manifestation of the alleged defect); *Breakstone v. Caterpillar, Inc.*, No. 09-23324-CIV, 2010 WL 2164440, at *6 (S.D. Fla. May 26, 2010) (putative class members whose engines did not manifest a defect had no legally cognizable claim under the FDUTPA).

APPLE INC.'S REPLY ISO MOT. TO
DISMISS AND/OR TO STRIKE FAC
CASE NO. 2:13-CV-7674-GAF (AJW)

"routinely expected to last the lifetime of the vehicle" and that consumers would not normally expect to "wear out" or break.  (*See Matthews* Compl. [12-CV-60630 Dkt. #1] ¶¶ 10, 14, 22-23.)[10]

Florida law thus does *not* compel the result Plaintiff seeks—the only Florida appellate decision Plaintiff cites (*Collins*) is inconsistent with later Florida decisions and, in any event, involved serious safety issues that could not possibly have been known to consumers.  And adopting Plaintiff's reading of the FDUTPA would lead to absurd results.  If Florida law were extended the way that Plaintiff proposes, virtually every manufacturer of a consumer product sold in Florida would be guilty of "deceiving" their consumers.  Even with the best possible quality controls, there is always a risk that products will sometimes break.  If failure to disclose the *possibility* that a product might experience such a defect (even *after* the warranty expires) were enough to state a FDUTPA claim, every manufacturer would be subject to endless liability for "nondisclosures" and warranties themselves would be rendered meaningless.[11]

Finally, Plaintiff's position that the parties' contract (here, the warranty) is irrelevant is also nonsensical given that, under the FDUTPA, "actual damages"

---

[10] In addition, as Apple pointed out in its opening brief, the *Matthews* court's analysis of the FDUTPA claim is cursory at best.  (*See* Mot. at 14 n.9.)  And, of course, *Matthews* (and *Rothstein*) are not binding authority on any aspect of Florida law.

[11] *See Ho v. Toyota Motor Corp.*, 931 F. Supp. 2d 987, 994 (N.D. Cal. 2013) (quoting *Daugherty*, 144 Cal. App. 4th at 829) ("[f]ailure of a product to last forever would become a 'defect,' a manufacturer would no longer be able to issue limited warranties, and product defect litigation would become as widespread as manufacturing itself."); *Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 972 (N.D. Cal. 2008) ("All parts will wear out sooner or later and thus have a limited effective life.  Manufacturers always have knowledge regarding the effective life of particular parts and the likelihood of their failing within a particular period of time.  Such knowledge is easily demonstrated by the fact that manufacturers must predict rates of failure of particular parts in order to price warranties and thus can always be said to 'know' that many parts will fail after the warranty period has expired.  A rule that would make failure of a part actionable based on such 'knowledge' would render meaningless time[ ] limitations in warranty coverage.").

APPLE INC.'S REPLY ISO MOT. TO
DISMISS AND/OR TO STRIKE FAC
CASE NO. 2:13-CV-7674-GAF (AJW)

explicitly depend on the terms of contract.  *See Rollins, Inc. v. Heller*, 454 So. 2d 580, 585 (Fla. Dist. Ct. App. 1984) (damages under the FDUTPA are defined as "the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered *according to the contract of the parties*.") (emphasis added). Plaintiff's claim here is based on Apple's alleged "nondisclosure" of the risk of product failure—*of course* the statements Apple actually made to consumers *about that very issue* are relevant to Plaintiff's FDUTPA claims.

Nevertheless, in her Opposition Plaintiff tries to distinguish the cases Apple cited for the proposition that the terms of the parties' contracts matter for FDUTPA claims—*Maxcess, Inc. v. Lucent Technologies, Inc*., No. 6:04-CV-204, 2005 WL 6125471 (M.D. Fla. Jan. 5, 2005), and *Zlotnick v. Premier Sales Grp.*, 480 F.3d 1281 (11th Cir. 2007)—on the grounds that the case either dealt with the economic loss rule (*Maxcess*) or is factually distinguishable (*Zlotnick*).  (*See* Opp. at 11.)  But Apple is not arguing that the economic loss rule bars Plaintiff's claims.  Instead, the point is that the parties' contracts (*i.e.*, the warranty) actually matter and are not "irrelevant" as Plaintiff apparently contends.  In *Maxcess*, for example, the court held that regardless of the form of the plaintiff's claims, issues of "product quality and character" (*i.e.*, the very type of claim Plaintiff is asserting here) are "inextricably interwoven with contract" under Florida law.  2005 WL 6125471, at *7.  And the Eleventh Circuit reached a similar conclusion in *Zlotnick*, where the terms of the parties' contract eliminated any possibility of a FDUTPA claim by disclosing the "fact" that the plaintiff contended had been omitted.  Here, just as in *Zlotnick*, the "express terms of the … [parties'] agreement" undercut plaintiff's FDUTPA claim and "eliminate[] any possibility that a reasonable purchaser would be misled."  480 F.3d at 1285, 1287.

### B.   Plaintiff's FDUTPA Claim Fails as a Matter of Pleading.

According to Plaintiff, her claims should proceed under Florida law because (she contends) Apple was "aware" (but failed to disclose) that the power buttons of all iPhone 4 devices were "prone to fail," even though, as Plaintiff admits, those buttons that did "fail" did so long after the warranty had expired.  (FAC ¶¶ 4, 15, 27; *see also id.* ¶ 24 ("seemed to routinely fail"), ¶ 36 ("likely render it inoperable").)  As discussed above, those claims should be rejected as a matter of law.  But even if the Court concludes that such claims could theoretically be viable under the FDUTPA, Plaintiff's current complaint should be rejected because she has failed to plead facts (as opposed to conclusory boilerplate) to support two key elements of her claim—Apple's "knowledge" of the "defect" and the extent of the alleged "problem."

First, although Plaintiff's complaint is vague on this issue, Plaintiff appears to contend that the "risk" that the iPhone button could break was so widespread and pervasive that the buttons on all or most of the devices have broken or will break. (*See* FAC ¶ 15 ("significantly likely" to malfunction).)  Apparently Plaintiff contends that every single one of the millions of iPhone 4 devices sold ("one of the most popular smartphones in the world" (FAC ¶ 13)) were so "defective" that the "problem" is virtually certain to manifest itself in all (or even most) iPhone 4s.  Yet she pleads few (if any) *facts* to support that assertion—instead, her allegations on this issue are deliberately vague.  (*See, e.g.*, FAC ¶¶ 4, 15, 24.)  If Plaintiff's claims proceed on the grounds that the "defect" impacted most or all iPhone 4 customers, she should be required to plead at least some facts to support that position.[12]

Second, Plaintiff has also failed to allege facts to support her assertion that Apple "knew" of this "defect" at the time she bought her iPhone 4.  The courts'

---

[12] Apple strongly disputes that iPhone 4 power buttons are "substantially likely" to malfunction over any applicable time period.  When and if it is necessary to do so, Apple will prove that this allegation is plainly false.

APPLE INC.'S REPLY ISO MOT. TO
DISMISS AND/OR TO STRIKE FAC
CASE NO. 2:13-CV-7674-GAF (AJW)

decisions in *Matthews* and *Rothstein*—which Plaintiff claims control—depended heavily on defendant's *knowledge* of the defect at the time the plaintiffs purchased their cars. *See Matthews*, 2012 WL 2520675, at *1 ("Matthews significantly alleges that Honda was aware of this latent defect"), at *3 (plaintiff "alleg[ed] that Honda knowingly failed to disclose the latent paint defect"); *Rothstein*, 2005 WL 3093573, at *2 ("DCC's [defendant's] argument ignores Plaintiff's allegation that DCC knew the braking system was defective at the time of sale and concealed that fact from Plaintiff"). But here, Plaintiff only vaguely alleges that "Apple has been aware of the power button defect yet refused, and continues to refuse, to do anything about it," citing what appears to be a website posting from March 8, 2013—almost two years after the product launched, and almost a year and a half *after* Plaintiff purchased her own phone. (*See* FAC ¶¶ 27, 32.) While Plaintiff does describe other "complaints" she contends customers posted on the Internet (including on a discussion forum hosted by Apple) (*see id.* ¶ 18), the posts Plaintiff cites do not even begin until January 2011—over six months months after the iPhone 4 was released. And only a handful of the posts Plaintiff cites were made before Plaintiff purchased her own device (in October 2011). (*See, e.g.* FAC ¶¶ 19-27 (citing comments posted in 2011 through March *of 2013*).) To demonstrate Apple's alleged "knowledge," Plaintiff was required to identify concrete facts showing that "knowledge," including when, specifically, she contends Apple learned of this alleged "defect." *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1146-47 (9th Cir. 2012) (allegation that defendant was "on notice" of defect was "merely conclusory"; plaintiff needed to point to concrete facts, such as "'pre-release testing data'").[13] A handful of posts on an Internet forum (even one hosted

---

[13] *See also Williamson v. Apple Inc.*, No. 5:11-CV-377, 2012 WL 3835104, at *7 (N.D. Cal. Sept. 4, 2012) ("The studies and internet articles which apparently discuss defects in the iPhone 4's glass housing fare no better because they do not create a duty disclose [sic] without an allegation explaining how or why Apple was aware of these items."); *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 986 (N.D. Cal.

by Apple) hardly constitutes "knowledge" of an "issue"—particularly when all of those posts were made long after the iPhone 4 was released.

                                    *        *        *

In short, "failing" to disclose the risk that a product might break after the warranty expires simply is not (and cannot be) a "deceptive" practice under the FDUTPA.  Plaintiff's UCL claim (premised on a violation of FDUTPA) should therefore be dismissed with prejudice.

## IV.   <u>PLAINTIFF'S FDUTPA ALLEGATIONS DO NOT SATISFY THE REQUIREMENTS OF RULE 9(b).</u>

Plaintiff's claims should also be dismissed because they do not meet the pleading requirements of Rule 9(b).  As a preliminary matter, Plaintiff's contention that Rule 9 does not apply should be rejected out of hand.  As Plaintiff notes in her Opposition, some district courts in other circuits have concluded that Rule 9 does not always apply to FDUTPA claims.  (*See* Opp. at 16.)  But here in the Ninth Circuit, since her claims sound in fraud there is no question that Rule 9 applies—regardless of whether Plaintiff's claim is cast as a FDUTPA or UCL claim.  *See, e.g.*, *Dremak v. Iovate Health Scis. Grp.,* No. 09cv1088 BTM (KSC), 2014 U.S. Dist. LEXIS 11750, at *71 (S.D. Cal. Jan. 27, 2014) (applying Rule 9(b) to FDUTPA and other states' laws); *Apodaca v. Whirlpool Corp.*, SACV 13-00725 JVS, 2013 WL 6477821, at*12-13 (C.D. Cal. Nov. 8, 2013) ("Plaintiff Kaleita's fraudulent concealment and deceptive act FDUTPA claims must meet Federal Rule of Civil Procedure 9(b)."); *Kearns v. Ford Motor Co*., 567 F.3d 1120, 1126 (9th

2009) (rejecting argument that Apple had "knowledge of the material fact" that the "iMac was designed with an inferior display" where allegations of knowledge were so conclusory that similar claims "could be made about any alleged design defect in any manufactured product"); *Oestreicher*, 544 F. Supp. 2d at 974 n.9 ("Random anecdotal examples of disgruntled customers posting their views on websites at an unknown time is not enough to impute knowledge upon defendants.  There are no allegations that [defendant] knew of the customer complaints at the time plaintiff bought his computer.").

APPLE INC.'S REPLY ISO MOT. TO
DISMISS AND/OR TO STRIKE FAC
CASE NO. 2:13-CV-7674-GAF (AJW)

1  Cir. 2009) (applying Rule 9(b) to UCL claim based on failure to disclose an alleged

2  defect).

3  Plaintiff also argues that Rule 9 should not apply because "reliance is *not* an

4  element of an FDUTPA claim."  (Opp. at 17.)  But *causation* is an element of a

5  FDUTPA claim, and "the great weight of recent authority" in the Florida courts

6  "holds that causation typically requires individualized proof."  *Greenfield*, 2012

7  WL 1015806, at *9-10 (citing *Hutson v. Rexall Sundown, Inc.*, 837 So. 2d 1090,

8  1092-93 (Fla. Dist. Ct. App. 2003)); *see also Gen. Motors Acceptance Corp. v.*

9  *Laesser*, 718 So. 2d 276, 277 (Fla. Dist. Ct. App. 1998) ("[T]o be actionable an

10  unfair or deceptive trade practice must be the cause of loss or damage to a

11  consumer.").  Under both Florida and Ninth Circuit law, Plaintiff is required to

12  plead her own claims with specificity under Rule 9.[14]

13  Yet Plaintiff does not do so.  In her Opposition, Plaintiff argues that her

14  allegations are sufficient because she identified "the specific nature of the defect,"

15  "how that defect exhibited itself," "Apple's knowledge"[15] and "Apple's uniform

16  _____

17  [14] *See Marolda v. Symantec Corp.*, 672 F. Supp. 2d 992, 1002 (N.D. Cal. 2009)
   ("The Ninth Circuit has recently clarified that claims of nondisclosure and

18  omission, as varieties of misrepresentations, are subject to the pleading standards of
   Rule 9(b).…. [T]o plead the circumstances of omission with specificity, plaintiff

19  must describe the content of the omission and where the omitted information should
   or could have been revealed, as well as provide representative samples of

20  advertisements, offers, or other representations that plaintiff relied on to make her
   purchase and that failed to include the allegedly omitted information."); *Perret v.*

21  *Wyndham Vacations Resorts, Inc.*, 846 F. Supp. 2d 1327, 1332 (S.D. Fla. 2012)

22  (Rule 9(b) requires allegations of "(1) precisely what statements or omissions were
   made in which documents or oral representations; (2) the time and place of each

23  such statement and the person responsible for making (or, in the case of omissions,
   not making) them; (3) the content of such statements and the manner in which they

24  misled the plaintiff; and (4) what the defendant obtained as a consequence of the
   fraud.").

25  

26  [15] As discussed above, Plaintiff has not alleged any facts (as opposed to boilerplate
   language) regarding Apple's knowledge of the alleged defect.  Citing what appears

27  to be a website posting from nearly a year and a half *after* Plaintiff purchased her
   phone, Plaintiff alleges that Apple "knew" about the alleged defect and yet

28  "refused, and continues to refuse, to do anything."  (*See* FAC ¶¶ 27, 32.)  Plaintiff

APPLE INC.'S REPLY ISO MOT. TO
DISMISS AND/OR TO STRIKE FAC
CASE NO. 2:13-CV-7674-GAF (AJW)

omission." (Opp. at 17.) But Plaintiff ignores the fact that the FAC says almost nothing about her own iPhone purchase or her experience with the device. Again, she never explains what ads or marketing statements (if any) she saw before purchasing her phone, whether her service provider made any statements to her about her phone, the bases for her (apparent) belief that the phone would remain defect-free after the warranty expired, or where she contends that Apple should have included some kind of disclosure about the risk of potential post-warranty malfunctions (or what, exactly, she contends that Apple should have disclosed).

If Plaintiff is going to proceed on the basis that she was injured by some kind of "deceptive" conduct by Apple, she should be required to allege at least *some* facts about her own experience and how, specifically, she contends she was "deceived." Since she apparently refuses to do so, her claims must be dismissed.

## V.   **CUSTOMERS WHOSE IPHONES WORKED WELL FOR YEARS HAVE NO POSSIBLE "INJURY" CLAIM.**

Next, if this case does proceed, the Court should order Plaintiff to define the proposed class in a way that does not include vast numbers of uninjured consumers. Apple has not moved to strike Plaintiff's class definition because Apple "disagree[s]" with it. (*See* Opp. at 18.) Apple moves to strike that definition because the vast majority of Plaintiff's putative class have no possible claim of injury under any theory of liability.

Plaintiff's "procedural" objection—that motions to strike class definitions are improper—is simply wrong: Where appropriate, courts can and do strike class allegations at the pleading stage. *See, e.g.*, *Missud v. Oakland Coliseum Joint Venture*, No. 12-02967 JCS, 2013 WL 812428, at *25 (N.D. Cal. Mar. 5, 2013)

---

cites other postings, but never asserts that Apple knew of these customer complaints or how any of those postings could possibly constitute Apple's "knowledge" of the alleged defect. (*See* FAC ¶¶ 19-30; *see also supra* pg. 15, n.13 (citing cases).)

APPLE INC.'S REPLY ISO MOT. TO
DISMISS AND/OR TO STRIKE FAC
CASE NO. 2:13-CV-7674-GAF (AJW)

1  ("[D]istrict courts may strike class allegations prior to discovery where it is
2  apparent from the pleadings that a class cannot be maintained."); *Tietsworth v.*
3  *Sears, Roebuck & Co.*, 720 F. Supp. 2d 1123, 1146-47 (N.D. Cal. 2010) (striking
4  class allegations); *Hovsepian v. Apple, Inc.*, No. 08-5788 JF (PVT), 2009 WL
5  5069144, at *2 (N.D. Cal. Dec. 17, 2009) (court may "strike class allegations prior
6  to discovery if the complaint demonstrates that a class action cannot be
7  maintained"); *Kamm v. Cal. City Dev. Co.*, 509 F.2d 205, 212-13 (9th Cir. 1975)
8  (striking class allegations).

9       Plaintiff is wrong on the "substance" as well—under Florida law, consumers
10 whose phones never malfunctioned have no claim and cannot sue to recover an
11 alleged "diminution in value" caused by an alleged risk that their phone might
12 eventually break.  The key case Plaintiff cites for her position is *Collins*.  But
13 Plaintiff's reliance on *Collins* is misplaced.[16]  There is no question that all owners
14 of the vehicles at issue in *Collins* were impaired by the design defect that resulted in
15 the vehicles' seat belts being "unreasonably dangerous and unfit for ordinary use as
16 a passenger restraint system."  894 So. 2d at 989.  Once the vehicle owners had
17 knowledge of the defect, they had a present problem—they could not operate their
18 vehicles without risking injury or life—that diminished the value of their vehicles.
19 *See id.* at 990-91 ("We see no requirement in FDUTPA that a defect manifest itself
20 by failing to operate in an emergency or by causing injury.  Under the facts asserted
21 in this case, Collins has alleged more than a possible injury.").[17]  Unlike the vehicle

---

22
23 [16] As a preliminary matter, the *Collins* court did not evaluate the plaintiff's class
24 definition, limiting its holding to whether Collins, who had to replace her
   automobile's defective seat belts, could recover for the diminution in value of her
   vehicle under the FDUTPA.  *Id.* at 989 & n.2.  Given this procedural posture,
25 *Collins* does not provide support for Plaintiff's broad class definition.

26 [17] As the *Collins* court explained: "automobile safety belts 'present special
   reliability concerns.  They are used for the emergency protection of human life, and
27 unfortunately, an ordinary passenger has no way of knowing whether his or her
   seatbelt will actually perform until an unexpected moment of impact, when an
28 unforeseeable collision forces reliance on the seatbelt's emergency protection.

owners in *Collins*, iPhone 4 owners whose power buttons continue to function have no present problem.  The phones continue to operate as the owners expected they would at the time of purchase, and the possibility of defect does not create a risk of injury or life that diminishes the value of the phones.[18]

Indeed, as Florida's own courts have recognized, in the years since *Collins* was decided Florida has become "firmly aligned" with the majority of other states and now ***requires*** the manifestation of a defect to bring damages claims.  *Kia*, 985 So. 2d at 1139 (FDUTPA affords no relief to plaintiffs whose vehicles did not experience a manifestation of the alleged defect); *see also Toyota*, 2012 U.S. Dist. LEXIS 189744, at *235 ("Florida courts have followed a different path as to the manifestation of defect issue since *Collins*.");[19] *Breakstone*, 2010 WL 2164440, at

---

Wearing a seatbelt may bolster an expectation that it will perform in a time of need, but ... such use may also imbue dangerously defective product with a false and misleading appearance of reliability.'"  894 So. 2d at 991 n.3 (citing *DaimlerChrysler Corp. v. Inman*, 121 S.W.3d 862, 879 (Tex. Ct. App. 2003)).

[18] Plaintiff's reliance on *Wolin v. Land Rover North America, LLC*, 617 F.3d 1168 (9th Cir. 2010) (*see* Opp. at 5), is similarly misplaced.  Plaintiff cites *Wolin* for the proposition that "The Ninth Circuit has … held that in defect claims brought under the FDUTPA, manifestation of the defect is not a prerequisite to stating a claim …."  (Opp. at 5.)  That is simply wrong.  *Wolin* does not hold—or even address— whether FDUTPA plaintiffs must show that they experienced a manifestation of a defect in order to recover.  Instead, the Ninth Circuit in *Wolin* held that whether or not class members experienced the defect went to the "merits" ("[w]hat Land Rover argues is whether class members can win on the merits") and that for purposes of ***class certification*** the district court erred "when it required [plaintiffs] to show that a majority of …vehicles manifested the results of the defect."  *Wolin*, 617 F.3d 1173-74.  Whether or not the Ninth Circuit's conclusions in *Wolin* regarding commonality and predominance survive the Supreme Court's later decisions in *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 180 L. Ed. 2d 374 (2011), and *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 185 L. Ed. 2d 515 (2013), is for another day.  But *Wolin* certainly does not stand for the proposition that plaintiffs are entitled to recover under the FDUTPA even if they never experienced problems from any alleged "defect".

[19] Lexis uses a *Shepard's* Signal™ to indicate that the May 4, 2012 decision issued by Judge James V. Selna in *In re Toyota Motor Corp.* has received "negative treatment."  However, that "negative treatment" stems from *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Products Liab. Litig.*, 287 F.R.D. 614 (C.D. Cal. 2013) ), where Judge Selna vacated a separate, independent

*6 (putative class members whose engines did not manifest a defect had no legally cognizable claim under the FDUTPA).  In *Kia*, the Florida District Court of Appeal expressly adopted the Seventh Circuit's rationale for requiring the manifestation of a defect in these kinds of cases—namely, that when only some members of a putative class experience the alleged problem, allowing all of those customers to bring claims overcompensates the putative class and leads to excess precautions by the sellers.  985 So. 2d at 1139 n.5 (quoting *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1017 (7th Cir. 2002)); *see also Toyota*, 2012 U.S. Dist. LEXIS 189744, at *244 (buyers of products "with a mere propensity to fail would get everything they bargained for if the alleged defect never manifested, or if it was fixed.").

In fact, Plaintiff's contention that "all" class members have been "injured" is even more absurd in light of the facts of this case.  The iPhone 4 was launched almost four years ago, in summer 2010.  (FAC ¶ 8.)  A customer whose iPhone 4 has been working properly for the past three years has received everything he could have reasonably expected from his device, and has no possible "diminution in value" claim—even assuming, as Plaintiff alleges, that there is a risk that the power button on that device might eventually wear out.  *See Kia*, 985 So. 2d at 1139 n.5 ("'Owners who wring the last possible mile out of the vehicles receive everything they paid for ....'") (quoting *Bridgestone/Firestone, Inc.*, 288 F.3d at 1019).  Here, just as in *Kia*, allowing Plaintiff's class definition allegations to go forward unchallenged would be a windfall for those class members whose iPhones continue to function (or were repaired under Apple's warranty).  Those iPhone owners have already received more than they bargained for—a functioning iPhone 4 that worked well for *years* after Apple's warranty expired.

Finally, Plaintiff's contention that the scope of her proposed class is irrelevant because *she* has standing misses the point.  (*See* Opp. at 20.)  Apple is

order granting a motion for sanctions (and which has no bearing on the May 4, 2012 decision).

APPLE INC.'S REPLY ISO MOT. TO
DISMISS AND/OR TO STRIKE FAC
CASE NO. 2:13-CV-7674-GAF (AJW)

1  not challenging *Ms. Hilton's* standing to sue (at least, not in this regard).  Instead,

2  Plaintiff's class definition is improper because it includes *other* class members who,

3  by definition, have not been injured: they never experienced any defects with their

4  iPhones (or, if they did, the defects were repaired under warranty) and therefore do

5  not have standing.  *See Rasmussen v. Apple Inc.*, --- F. Supp. 2d ----, 2014 WL

6  1047091, at *12 (N.D. Cal. Mar. 14, 2014) (striking class definition on the

7  pleadings because it "is overbroad as it includes within the class individuals who

8  have not experienced any issue or defect with their 27–inch iMac"); *Hovsepian*,

9  2009 WL 5069144, at *6.

10       As pled, the class Plaintiff seeks to certify will include many customers who

11  experienced no injury whatsoever and lack standing to sue in their own right.

12  Accordingly, Plaintiff's class definition is facially improper and should be stricken.

13  *Hovsepian*, 2009 WL 5069144, at *6 ("[T]he class is not ascertainable because it

14  includes members who have not experienced any problems with their iMac display

15  screens.  Such members have no injury and no standing to sue.").

16  ## VI.   PLAINTIFF LACKS STANDING TO SEEK AN INJUNCTION.

17       In her Opposition, Plaintiff does not contest that she lacks standing to seek

18  injunctive relief.  Nor could she.  Because Plaintiff is aware of the alleged

19  misconduct, "as a matter of law, [she] cannot establish that [s]he is under any threat

20  of suffering actual and imminent future harm" and cannot meet Article III's

21  requirements for seeking injunctive relief.  *Campion v. Old Republic Home Prot.*

22  *Co.*, 861 F. Supp. 2d 1139, 1149-50 (S.D. Cal. 2012).  Her claim for injunctive

23  relief should therefore be stricken.

24  ## VII.   CONCLUSION

25       For the reasons discussed above, Apple respectfully requests that the Court

26  dismiss the First Amended Complaint, with prejudice and in its entirety.

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Dated:  April 7, 2014

RICHARD B. GOETZ
MATTHEW D. POWERS
KELSEY M. LARSON
O'MELVENY & MYERS LLP

By:  /s/ Matthew D. Powers
          Matthew D. Powers
Attorneys for Defendant
Apple Inc.